**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LLOYD G.,[1] | : | Case No. 2:25-cv-00465 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Lloyd G. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), and the administrative record (Doc. #8).

## I. Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for Disability Insurance Benefits on July 17, 2022, and for Supplemental Security Income on January 24, 2023, alleging disability beginning on June 20, 2022,[2] due to sleep apnea, insomnia, depression and anxiety, memory loss, excessive daytime sleepiness, fatigue, and chronic pain. (Doc. #7-6, *PageID* #425). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Jeffrey Hartranft. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] The ALJ reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since November 12, 2022, the amended alleged disability onset date.

Step 2: He has the following severe impairments: degenerative disc disease of his cervical and lumbar spine, obesity, degenerative joint disease of his left shoulder with tendon tear and surgical repair, headaches, idiopathic hypersomnia, obstructive sleep apnea, orthostatic intolerance, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder (ADHD).

Step 3: He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] could stand and/or walk

---

[2] On November 30, 2023, Plaintiff amended his alleged disability onset date to November 12, 2022. (Doc. #8-5, *PageID* #356).

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

4 hours out of an 8 hour workday; sit for 4 hours out of an 8 hour workday; frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; and frequently reach in all directions with his left upper extremity except for occasional overhead reaching with that extremity. He should avoid workplace hazards such as unprotected heights and machinery. He can perform routine and repetitive tasks involving only simple work related decisions and with few, if any, workplace changes. He can work in environments with no strict production quotas or fast paced work such as on an assembly line. He can occasionally interact with the general public, coworkers, and supervisors with no customer service, supervision, persuasion, or conflict resolution responsibilities."

Plaintiff is unable to perform his past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, the vocational expert testified that there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #8-2, *PageID* #s 92-105). Based on these findings, the ALJ concluded that Plaintiff has not been disabled since November 12, 2022. *Id.* at 106.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 89-106), Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #13), and Plaintiff's Reply (Doc. #14). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff argues that the ALJ failed to include any environmental limitation regarding noise exposure as well as a mental limitation as to superficial contact in Plaintiff's RFC. (Doc. #11, *PageID* #s 3388–3409; Doc. #14, *PageID* #s 3423–32). The Commissioner contends that the ALJ properly considered Plaintiff's headache allegations and found them not supported by the record. Additionally, the ALJ also properly evaluated the opinion evidence in accordance with the appropriate regulations and found that Plaintiff could perform work existing in significant numbers in the national economy. (Doc. #13, *PageID* #s 3415-21).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id.* The governing regulations describe five different

categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors. 20 C.F.R. § 404.1520c(b)(2). While the regulations state that ALJs "*may* . . . explain how [they] considered" the other various factors, these same regulations mandate that an ALJ "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Supportability "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Kenneth M. v. Comm'r of Soc. Sec.*, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.), quoting *Reuse v. Comm'r of Soc. Sec.*, 2021 WL 1697919, at *7 (N.D. Ohio Apr. 29, 2021) (internal citations omitted). When evaluating supportability, the more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). Failing to discuss either supportability or consistency requires remand. *Kenneth M.*, 2025 WL 1948987, at *12; *Whalen v. Comm'r of Soc. Sec.*, 2025 WL 1452713, at *17 (N.D. Ohio May 21, 2025), *report and recommendation adopted*, No. 1:24-CV-1928, 2025 WL 1756524 (N.D. Ohio June 25, 2025) ("An ALJ may discuss one adequately but not the other, thus requiring remand.").

An ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Warren I.*, 2021 WL 860506, at *8. The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in

each case, to each medical source." *Kenneth M.*, 2025 WL 1948987, at *12 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp. 3d 900, at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

***Environmental Limitation***

Plaintiff asserts that the ALJ failed to evaluate documented phonophobia (noise sensitivity) associated with Plaintiff's chronic headache disorder, resulting in an RFC that improperly omits any environmental limitation regarding noise exposure. (Doc. #11, *PageID* #s 3392-96). In reply, Plaintiff also argues that the Commissioner's opposition rests on a factual error regarding Plaintiff's amended onset date and ignores dispositive medical evidence from treating neurologist, Dr. Shafqat. (Doc. #14, *PageID* #s 3425-27). Plaintiff lists the following records to support his noise sensitivity limitation:

- February 16, 2023 office visit: Plaintiff reports that he "think[s] [he] can be sensitive to sound." (Doc. #8-8, PageID #s 970); (Doc. #8-14, PageID #2202).
- February 21, 2023 questionnaire: Plaintiff indicates that he "can be sensitive to sound." (Doc. #8-16, PageID #2698).
- December 1, 2023 office visit: Certified Physician Assistant Melanie Queener summarizes Plaintiff's complaints, including that "[headaches] are mild in nature with some mild sensitivity to sound…." (Doc. #8-17, *PageID* #2743).

Plaintiff also contends that, on February 22, 2023, treating neurologist Rafia Shafqat, M.D., documented that Plaintiff's baseline head pain of 3/10 exacerbates to 5/10 once or twice per week

and is "associated with photophobia, phonophobia and lightheadedness as well as cognitive slowing." (Doc. #8-20, *PageID* #3179); (*see also* Doc. #8-16, *PageID* #2670). Dr. Shafqat diagnosed Plaintiff with chronic migraine without aura, intractable, without status migrainosus. *Id.* at 3180.

The ALJ first discussed Plaintiff's headaches at Step 3, finding that:

> As noted in Social Security Ruling 19-4p, there is no listing for headaches; however, a primary headache disorder, alone or in combination with another impairment(s), could medically equal a listing. In this case, the record, as summarized in Finding 6 below, fails to objectively document an intensity of symptoms approaching any listed impairment. Indeed, the record fails to document any related persistent neurological deficits. Moreover, the record fails to demonstrate evidence consistent with listings regarding epilepsy or epileptic seizures (11.02), a central nervous system vascular accident (11.04), a benign brain tumor (11.05), Parkinsonian syndrome (11.06), cerebral palsy (11.07), spinal cord or nerve root lesions (11.08), multiple sclerosis (11.09), amyotrophic lateral sclerosis (11.10), anterior poliomyelitis (11.11), myasthenia gravis (11.12), muscular dystrophy (11.13), peripheral neuropathies (11.14), subacute combined cord degeneration (11.15), a degenerative disease not listed elsewhere with disorganization of motor functions as described in 11.04B (11.17A), chronic brain syndrome (11.17B), cerebral trauma (11.18), or syringomyelia (11.19). Accordingly, I find that [Plaintiff]'s headaches fail to meet or medically equal listing level severity.

(Doc. #8, *PageID* #94).

In formulating the physical limitations in Plaintiff's RFC, the ALJ summarized the evidence in the record, especially noting that, "[h]eadaches were described as daily but mild in nature *with only mild sensitivity to sound* and no photophobia, nausea, vomiting, or dizziness." (Doc. #8-2, *PageID* #101) (emphasis added), (citing Doc. #8-17, *PageID* #2743). The ALJ included limitations associated with headaches in spite of his finding that "the above-summarized record generally did not indicate severe complications or frequent reports associated with

headaches." *Id.* The ALJ further noted there were "few if any visits when he reported having an active headache, and the record, as summarized above, indicated that they were generally mild and self-resolved." *Id.*

Although Plaintiff argues that "the ALJ's decision contains no discussion of phonophobia or noise sensitivity, (Doc. #11, *PageID* #3393), the ALJ expressly contemplated Plaintiff's headaches as well as his reports of sensitivity to sound, noting that mentions of his phonophobia indicated it was mild. (*See* Doc. #8-2, *PageID* #101). Further, Plaintiff contends that he "would predictably experience more frequent or severe headaches" as a result of work-related noise, such as pen clicking and stomping. (Doc. #11, *PageID* #3395). Plaintiff also cites to SSR 85-15, which states that impact on a claimant's ability to work would be considerable "[w]here an individual can tolerate very little noise…." *Id.* However, the record does not support that Plaintiff is unable to tolerate "very little noise"; to the contrary, mentions of Plaintiff's phonophobia are solely subjective and indicate no more than mild impairment. (Doc. #8-8, *PageID* #s 970); (Doc. #8-14, *PageID* #2202); (Doc. #8-16, *PageID* # 2698); (Doc. #8-17, *PageID* # 2743); (Doc. #8-20, *PageID* #3179); (Doc. #8-16, *PageID* #2670).

The ALJ also expressly considered the persuasiveness of Plaintiff's subjective complaints, noting that the state agency found Plaintiff's complaints to be only partially consistent as physical examinations were largely normal, and Plaintiff had normal mannerisms and maintained normal eye contact, speech, and thoughts. (Doc. #8-2, *PageID* #104). The ALJ also stated that "[Plaintiff's] level of activity … is inconsistent with the level and persistence of symptoms that he alleges." *Id.* In spite of these discrepancies, the ALJ found that "the location, duration, frequency,

and intensity of [Plaintiff's] alleged symptoms, as well as precipitating and aggravating factors, to the extent supported by the record, are adequately addressed and accommodated in the above residual functional capacity." *Id.*

Accordingly, the ALJ properly evaluated Plaintiff's headache disorder in accordance with SSR 16-3p and properly considered his phonophobia as presented in the record. Plaintiff's first assignment of error is not well taken.

***Superficial Limitation in the RFC Determination***

Next, Plaintiff argues that the ALJ erred in evaluating the opinion of state agency psychological consultant Cindy Matyi, Ph.D., and failed to include a limitation to superficial contact in his RFC determination. (Doc. #11, *PageID* #s 3396-3409).

In formulating Plaintiff's mental RFC, the ALJ considered the medical opinion of Dr. Matyi, who reviewed Plaintiff's file upon reconsideration and found moderate impairments in the "B Criteria" areas of interacting with others and adapting or managing oneself. (Doc. #8-2, *PageID* #s 96, 102) (citing Doc. #8-3, *PageID* #s 204-13). Dr. Matyi found, in part, that Plaintiff was able to comprehend and remember simple instructions; carry out simple tasks; maintain attention; make simple decisions; adequately adhere to a schedule; work in an environment with no duties requiring independent problem-solving skills, organizing, planning or coordinating activities, or activities that required meeting strict time limits; relate adequately on a superficial basis in an environment that entailed infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny; and adapt to a setting in which duties are routine and predictable. *Id.* at 211-13. Regarding Plaintiff's social interaction limitations, Dr.

Matyi explained that "[Plaintiff] can relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." (Doc. #8-3, *PageID* #225).

The ALJ noted that while Dr. Hill, who reviewed Plaintiff's file initially, and Dr. Matyi generally supported the need for work-related mental limitations in the relevant functional areas, and the evidence supports the need for some such limitations, he found their assessment otherwise not persuasive because of their use of vocationally vague language, including "superficial," "infrequent," "minimal," and "over the shoulder supervision." (Doc. #8-2, *PageID* #102). The ALJ noted, however, that he included more vocationally relevant language in formulating Plaintiff's RFC. *Id.* The ALJ ultimately limited Plaintiff, in part, to "occasional[ ] interact[ions] with the general public, coworkers, and supervisors with no customer service, supervision, persuasion, or conflict resolution responsibilities." *Id.* 102–03.

"Superficial" is not a vocationally defined term. *Deana F. v. Comm'r of Soc. Sec.*, No. 2:25-cv-1121, 2026 WL 1295348, at *11 (S.D. Ohio May 12, 2026) (citing, in part, *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *4 (6th Cir. June 6, 2025) (other citations omitted). Further, ALJs are not mandated to analyze superficial interaction limitations in a specific way or use magic words to account for them in their RFC determinations. *Reeves v. Comm'r of Soc. Sec.*, 618 F. Appx. 267, 275 (6th Cir. 2015). In fact, this Court has found that "'occasionally' does not create a sufficient conflict with 'superficially' when applied to 'interactions,' such that the ALJ would be required to explain that change." *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 738 (S.D. Ohio May 16, 2024) (Cole, D.J.) (reasoning that

limiting a claimant to occasional interactions with others necessarily "means he lacks time to interact socially on a non-superficial level"). The Sixth Circuit in *Reeves* likewise declined to note a distinction between "superficial" and "occasional," affirming an ALJs decision to limit claimant to "occasional interaction with the public" rather than the opined "superficial basis" limitation because the "superficial" limitation was adequately accounted for by using "occasional" and was supported by substantial evidence. 618 F. Appx. at 275. Accordingly, contrary to Plaintiff's argument, the ALJ "was not obligated to further explain his use of 'occasional.'" *Deana F.*, 2026 WL 1295348 at *13. Further, as discussed above, the "occasional interaction" limitation is supported by substantial evidence.

Plaintiff also takes issue with the ALJ's inclusion of occasional interactions with the general public, coworkers, and supervisors "with no customer service, supervision, persuasion, or conflict resolution responsibilities." (Doc. #11, *PageID* #3405) (referencing Doc. #8-2, *PageID* #s 96–97, 102). Plaintiff asserts that this limitation fails to "capture … important qualitative limitations on the depth and complexity of workplace interactions." *Id.* However, these limitations are overwhelmingly analogous to the limitations that Dr. Matyi recommended in her opinion. (Doc. #8-3, *PageID* #225) ("public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny"). In making this recommendation, Dr. Matyi found Plaintiff moderately limited in his ability to interact appropriately with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* Dr. Matyi found that Plaintiff was not otherwise significantly limited in his ability to interact socially. *Id.* Plaintiff has also failed to provide any evidence that would contradict Dr. Matyi's assessment or that would

support his argument for limitations that would preclude him from, for example, "working on coordinated tasks with coworkers, participating in detailed exchanges about work assignments, engaging in problem-solving discussions, or maintaining sustained social engagement throughout the workday." (Doc. #11, *PageID* #3405).

Finally, while Plaintiff does not take issue with the ALJ's supportability and consistency analysis, Plaintiff argues finding Dr. Matyi's opinion "not persuasive" because it was not in vocationally relevant terms constitutes a "semantic objection" that necessitates remand. (Doc. #11, *PageID* #3403). However, "an ALJ is not required to adopt a medical opinion verbatim." *Deana F.*, 2026 WL 1295348 at *10 (citing *Poe v. Comm'r of Soc. Sec*., 342 F. App'x 149 (6th Cir. 2009) and *Cooper v. Comm'r of Soc. Sec*., No. 2:18-CV-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) (Vascura, M.J.)). In fact, as in this case, "it may fall to the ALJ to 'convert[ ] and incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms'." *Christopher F. v. Comm'r of Soc. Sec.*, No. 2:24-cv-3148, 2025 WL 5276062, at *22 (S.D. Ohio August 4, 2025) (Litkovitz, M.J.) (citations omitted). Additionally, this Court has affirmed similar instances where an ALJ's reason for not incorporating a limitation verbatim was that it was not in vocationally significant terms. *See e.g., Brooke J. v. Comm'r of Soc. Sec.*, No. 2:25-cv-160, 2025 WL 3684280 (S.D. Ohio December 19, 2025) (Preston Deavers, M.J.). The important inquiry is whether the ALJ built "an accurate and logical bridge between the evidence and his conclusion" such that this Court can trace his reasoning. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). In this case, the ALJ has done just that. Therefore, Plaintiff's assignment of error is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #11) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

September 29, 2026

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge